JAMES CURRAN *vs.* DORCHESTER THEATRE COMPANY.

Suffolk.    November 12, 1940. — March 11, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Agency*, What constitutes, Scope of authority.    *Theatre.*

Evidence that the usher in a motion picture theatre was authorized in
his discretion to secure a temporary substitute and that on a certain
occasion he secured as substitute one who had from time to time
acted for the proprietor in that and other capacities in return for
passes, warranted a finding that the substitute was an employee of
the proprietor acting within the scope of his employment when he
ejected a patron with unnecessary force.

TORT.    Writ in the Superior Court dated April 22, 1937.

The case was heard by *Good*, J.

*C. S. Hartwell*, (*J. A. A. Anctil* with him,) for the defendant.

*W. G. Todd*, for the plaintiff.

DOLAN, J.    This is an action of tort to recover compensation for personal injuries sustained by the plaintiff while he was being ejected from a moving picture theatre, owned by the defendant and operated by its agents and servants.    The case was heard by the judge sitting without a jury.    The judge filed the following "Findings": "I find Curran [the plaintiff], a boy of fifteen years, was ejected from the premises of the defendant by an agent of the defendant acting within the scope of his employment and with great force and violence.    I do not find that the ejection of Curran was warranted, but assuming it were I find that greater force than was reasonable and proper and necessary was used by the defendant's agent to eject Curran."    The judge assessed damages in the sum of $5,000 on the first count of the plaintiff's declaration.    The case now comes before us on the defendant's exceptions to the denial of certain requests for rulings.

The evidence in its aspect most favorable to the plaintiff would warrant findings of the following facts.    On Sunday

afternoon, March 21, 1937, the plaintiff bought a ticket of admission and entered the theatre. He took a seat located on the aisle on the left side of the orchestra. During the progress of the "show," one Souza came down the aisle with a flashlight and approached some boys seated in front of the plaintiff. The usher "flashed the light" on them and told them to keep quiet. The plaintiff was not one of these boys. Having restored order Souza went "up back." Later Souza came down the aisle again. The plaintiff was seated with his hat on, while putting on his coat preparatory to leaving the theatre. Souza told him to take his hat off. The plaintiff told Souza that he was leaving. Souza then said "you are leaving and damned quick." He then grabbed the plaintiff "by the back of the neck with his left hand and by the seat of the pants with his right hand" and rushed him up the aisle at a quick pace. The plaintiff tried to "wiggle out of" Souza's grasp, but was unable to loosen his hold. As they came to one of the doors of the theatre, constructed for the most part of plate glass, Souza gave the plaintiff a shove. The plaintiff put up his hand to protect himself. It struck the glass in the door. The glass broke and his hand was "all cut and blood all over." The injuries sustained by the plaintiff were serious.

Just before the plaintiff was ejected by Souza the usher in charge of the section of the theatre where the plaintiff was seated had requested Souza to hold the flashlight and stand at the head of the aisle while he went to the washroom; "the usher had to get somebody." Souza had done work for the defendant from time to time for a period of about six months. He received no money for his work but received passes in return therefor. He delivered "bill boards" and window cards for the defendant. Occasionally he would help. He did anything to help out. He had acted as a substitute usher before and was paid with passes. The manager knew Souza as a patron and also as one who worked in the theatre doing work in behalf of the management. The manager had confidence in Souza. There were times when Souza would be called

upon "by the theatre to go over there." He was described as a "stooge" by the manager, who testified that a "stooge" was a boy that assisted in getting out circulars, window cards, "and any little job that they might do around there . . . that there come times when various ones of the employees needs one of these stooges to do some little job out there [in the theatre], and that they call these stooges to do them"; that Sunday afternoons are "ordinarily busy" since many children are there and that is the time "they require substitutes"; and that the "stooges" were men who could be entrusted with the duties of an usher.

At the time the plaintiff was ejected by Souza, the manager was not in the body of the theatre but was outside in the box office. The assistant manager was "outside of the body of the theatre" taking tickets and the special police officer employed at the theatre was absent. The management had confidence in the ushers and gave them discretion to some degree in the handling of matters that came up and in deciding whether they should leave their posts for a few minutes and what to do in that case. In reporting to the president and treasurer of the defendant how the "accident" happened, the manager said that he "got the information from the boy that was working there."

The only exceptions relied upon by the defendant are to the denial of its requests for rulings numbered 1, 2, 3, 5, 6, 7,[1] 19 and 20.

There was no error in the denial of the defendant's nineteenth and twentieth requests, to the effect that, as matter of law, the evidence was not sufficient to establish the fact that Souza was an agent of the defendant, or to establish the fact of negligence on the part of the defendant, its servants or agents. The evidence before recited would warrant the judge in finding that the usher who called upon Souza to act in his place was authorized by the defendant so to do, and that Souza was in fact acting as a servant or

---

[1] As to requests numbered 1, 5, and 7, the judge stated: "No; good law but inapplicable to facts found." As to requests numbered 2, 3, and 6, he stated: "No; inapplicable to facts found." — REPORTER.

agent of the defendant and within the scope of his employment when he ejected the plaintiff. The evidence was ample to support the finding of the judge that Souza ejected the plaintiff with great force and violence — with greater force than was proper and necessary. It follows that the defendant is liable for the conduct of Souza acting within the scope of his employment even if, as found, he did use unnecessary force in ejecting the plaintiff. *Howe* v. *Newmarch,* 12 Allen, 49, 57. *Levi* v. *Brooks,* 121 Mass. 501. *Grant* v. *Singer Manuf. Co.* 190 Mass. 489, 493. *Stager* v. *G. E. Lothrop Theatres Co.* 291 Mass. 464, 466. *Fanciullo* v. *B. G. & S. Theatre Corp.* 297 Mass. 44, 47. Upon the record it does not appear that there was any error in the denial of the other requests.

*Exceptions overruled.*