COMMONWEALTH *vs.* JOSEPH J. GLINIECKI (and two companion cases against the same defendant).

Worcester.  April 6, 1959. — June 30, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Practice, Criminal,* Continuance; Judicial discretion; Exceptions: whether error harmful; Requests, rulings and instructions. *Evidence,* Relevancy and materiality; Opinion: expert. *Error,* Whether error harmful.

No abuse of discretion was shown on the record of a criminal case in denial of a motion for a continuance, not accompanied by an affidavit, which was predicated upon alleged illegal possession of certain letters of the defendant by the Commonwealth and referred to a motion,

Commonwealth *v.* Gliniecki.

previously filed by the defendant and denied, to suppress evidence of the letters and for a return of the letters to him. [466–467]

At a criminal trial, a question asked a police officer on cross-examination whether the defendant had demanded a return of certain letters of his admittedly in the possession of the witness was properly excluded as immaterial. [467]

After a ballistics expert at a criminal trial had testified without objection that it was "possible" for two bullets to take the same course through a body, there was no error in allowing him to testify that he had "met up with that type of thing" in his "experience" and recalled a certain "fatal shooting" as "the case in which" he "saw this." [467–468]

Error, if any, in the admission of certain testimony at a criminal trial was not prejudicial where such testimony was merely cumulative of other testimony already in the case. [468–469]

A refusal to give certain instructions requested by the defendant at a criminal trial disclosed no error where the substance of the requested instructions was adequately covered in the judge's charge. [469–470]

INDICTMENTS, found and returned on January 10, 1958.

The cases were tried in the Superior Court before *Kirk*, J.

*Paul T. Smith*, for the defendant.

*William T. Buckley*, District Attorney, (*John F. Driscoll*, Assistant District Attorney, with him,) for the Commonwealth.

COUNIHAN, J. On January 10, 1958, the grand jury for the county of Worcester returned three indictments against the defendant, the first of which charged that the defendant on December 26, 1957, at Webster "did assault and beat Hazel M. Brown with intent to murder her by shooting her with a shotgun, and by such assault and beating did murder . . . Hazel M. Brown"; the second indictment charged that the defendant on the same day and at the same place "did assault Kenneth J. Brown by means of a dangerous weapon with intent to murder . . . Kenneth J. Brown"; and the third indictment charged that the defendant on the same day and at the same place "did assault Eugene W. Stark by means of a dangerous weapon."

The defendant pleaded not guilty to each indictment and was put to trial before a jury. The trial was subject to G. L. c. 278, §§ 33A–33G, as amended through St. 1955, c. 352, § 1. The jury returned a verdict of guilty of murder

in the second degree on the first indictment and verdicts of guilty on the second and third indictments. Thereafter the judge imposed a sentence of life imprisonment on the first indictment, and sentences of seven to twelve years and three to five years on the second and third indictments respectively, all sentences to be served concurrently within the precincts of the Massachusetts Correctional Institution at Walpole.

The cases come here upon the appeals of the defendant accompanied by eleven assignments of error based upon exceptions taken at the trial with a summary of the record and a transcript of the evidence. G. L. c. 278, §§ 33A–33G, as amended. The defendant in his brief failed to argue assignments of error numbered 3, 5, 6, and 7 so we deem them to have been waived. There was no error.

The defendant concedes in his brief that "[t]he jury could have found from the government's witnesses that on December 26th the defendant, armed with a shotgun, drove to the Stark home [a son-in-law of the deceased] where the deceased was visiting; that he threatened the deceased; that she and Stark drove to her house to get certain gifts the defendant had given her; that the defendant waited outside the Stark home; that upon the return of Stark and the deceased, he threatened to kill Stark and then intentionally shot and killed the deceased and then shot at Kenneth Brown [her son] who drove up to the scene of the homicide, at the time of, or immediately after the homicide." He also concedes that there was evidence from which the jury could find that when informed that the deceased no longer wished to see him, the defendant told the deceased that "if he 'couldn't have her' no one else would."

The defendant's first assignment of error relates to the denial by the judge of his motion filed immediately before the trial for a continuance, which was predicated upon an allegation that the Commonwealth had illegally acquired possession of certain property of the defendant, particularly some letters received by him from the deceased or members of her family. These letters had been previously brought to

the attention of the judge by a motion to suppress evidence of these letters, filed on February 25, 1958. That motion was heard by the judge in his lobby in the absence of a stenographer and was denied by him on the ground that no action was required. The motion for a continuance made reference to the defendant's motion to suppress which included a request that the letters be returned to him. This earlier motion is not reproduced in the summary of the record and no assignment of error was filed with respect to the denial of it. We therefore do not consider it. G. L. c. 278, § 33D. *Commonwealth* v. *Cero,* 264 Mass. 264, 271. *Commonwealth* v. *Polian,* 288 Mass. 494, 496–497. *Commonwealth* v. *Gale,* 317 Mass. 274, 277. *Commonwealth* v. *Bellino,* 320 Mass. 635, 644, 646. The assignment of error relating to the denial of the motion to continue was not adequate to cover the motion to suppress and return. No affidavit accompanied the motion for a continuance as required by Rule 46 of the Superior Court (1954). The denial of the motion to continue rested in the discretion of the judge and no abuse of discretion is shown. *Commonwealth* v. *Klangos,* 326 Mass. 690, and cases cited.

If the defendant desired information about the contents of the letters he should have sought it by a motion to inspect. See *Commonwealth* v. *Bartolini,* 299 Mass. 503, 506–507; *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 462.

The second assignment of error also relates to these letters which Lieutenant Lacaire, a detective of the State police, admitted were in his possession at the time of the trial. In cross-examination he was asked, "Well, a couple of weeks ago, the defendant demanded the return of that property, didn't he?" He answered "He did," but upon objection by the district attorney the question was excluded. There is nothing to this assignment of error for whether the defendant made a demand for the return of the letters is immaterial to his guilt.

The fourth assignment of error relates to the admission of testimony of Lieutenant John F. Collins, a ballistics expert of the State police, which appears in the transcript as fol-

lows: "Q. Now, have you an opinion, Lieutenant, as to whether or not it is possible for two distinct and separate shots to go through the very same course through a body?" Over the objection and exception of the defendant he answered, "Yes." He was then asked, "What is your opinion?" and he answered "That it is possible" without any objection by the defendant. Over the objections and exceptions of the defendant the following questions and answers appear: "Q. Have you in your experience met up with that type of thing?" and the answer was "Yes, sir." "Q. Do you recall the case in which you saw this?" and the answer was "Yes, sir." "Q. What case was it?" The answer was "Fatal shooting of Trooper Savela in Barre."

The defendant argues that these questions and answers were not within the special knowledge of the witness as a ballistics expert because the answers to the questions required special knowledge of the anatomy of the human body. But the defendant took no exception to the question asking for the witness's opinion and his answer that it was possible for two distinct and separate shots to go through the same course through a body. The other questions and the answers of the witness thereto admitted over the exceptions of the defendant merely dealt with reasons upon which he based his opinion, and this aspect of the testimony was fully covered by the judge in his charge when he told the jury they could accept or reject the whole or any part of an expert's testimony as they desired.

The defendant contends that a ballistics expert may not testify on matters which involve anatomy. We do not, however, need to decide such a problem here for we are of opinion that if there was error in this respect, which we doubt, it was not prejudicial. Earlier in the case Dr. Allan B. McNie, an expert in pathology attached to the department of legal medicine at Harvard University, testified that he examined the body of the deceased on December 27, 1957, and performed an autopsy on it. He then observed three entrance type gunshot wounds on the left side of the body and on the back of the body he observed two exit wounds.

The testimony of Dr. McNie regarding the number of entrance wounds was introduced apparently to rebut the contention of the defendant that only two shots were fired into the body of the deceased and that those shots were fired accidentally as he and the deceased were struggling for the possession of the shotgun. The testimony of Lieutenant Collins therefore was merely cumulative evidence and its admission was not prejudicial. *Commonwealth* v. *Taylor,* 327 Mass. 641, 650.

The remaining four assignments of error which were argued relate to the refusal of the judge to give certain requests for instructions. One of these requests was "[w]here an overt act is accompanied by a threat to do violence in case a condition imposed by the actor is not complied with, such act will not constitute an assault, if it appears that there is no present purpose to do harm and the circumstances are such that the person threatened must have known that no present assault was intended." Another request was "[i]f you have a reasonable doubt as to whether Stark believed that an assault upon him was intended even if he were to go into the house, then you must acquit the defendant of assaulting Stark." Another request was "[y]ou may consider threats of violence made against the defendant by Eugene Stark in determining whether the defendant had any apprehension for his own safety and the reasonableness of that apprehension." Another request was "[y]ou may also consider the character of Eugene Stark as a dangerous, quarrelsome or violent person, if known to the defendant, in determining whether the defendant had any apprehension for his own safety and the reasonableness of that apprehension."

We are of opinion that there was no error in the refusal of the judge to give these requests. "The judge was not required to grant any of these requests, however true the proposed instructions may have been. Charges would be endless as well as confusing if a judge could be compelled to call attention to every subsidiary fact and every possible inference." *Commonwealth* v. *Polian,* 288 Mass. 494, 499.

We have carefully examined the charge of the judge. It was complete, fair and understandable. It substantially covered all of the instructions sought by the defendant in his requests.

*Judgments affirmed.*